**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Kenlee F., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 3:21-cv-50355 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Carolyn W. Colvin, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

Kenlee F. ("Plaintiff") brings this action under 42 U.S.C. § 405(g) seeking a remand of the decision denying her application for supplemental security income. For the reasons set forth below, the Commissioner's decision is affirmed.

**BACKGROUND**

**A. Procedural History**

Plaintiff filed for supplemental security income on January 3, 2019. R. 172. This application alleged a disability beginning on August 5, 2018. *Id.* Plaintiff's application was denied initially on April 11, 2019, and upon reconsideration on July 16, 2019. R. 87, 110. On October 27, 2020, a hearing was held by Administrative Law Judge ("ALJ") Dianne S. Mantel where Plaintiff appeared and testified while represented by counsel. R. 35. Leslie F. Lloyd, an impartial vocational expert ("VE"), also appeared and testified. *Id.*

On March 3, 2021, the ALJ issued her written opinion denying Plaintiff's claim for supplemental security income. R. 13-26. Plaintiff appealed the decision to the Appeals Council but was denied on July 13, 2021. R. 1. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); Dkt. 10. Now before the Court are Plaintiff's motion for summary remand [17], the Commissioner's motion for summary judgment and response to Plaintiff's motion [18], and Plaintiff's reply [19].

---

[1] Martin J. O'Malley resigned as Commissioner of the Social Security Administration on November 29, 2024, and Carolyn W. Colvin has taken over as Acting Commissioner. Carolyn W. Colvin is substituted for Martin J. O'Malley pursuant to Federal Rule of Civil Procedure 25(d).

### B. The ALJ's Decision

In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 416.920(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of January 3, 2019. R. 15. At step two, the ALJ found that Plaintiff had the following severe physical impairments: obesity; cervical and lumbar degenerative disc disease; left knee osteoarthritis; right shoulder acromioclavicular (AC) joint osteoarthritis and tendonitis and partial tear of supraspinatus tendon, superior labrum, and subscapularis and rotator cuff impingement. R. 16. The ALJ also found that Plaintiff had the following severe mental impairments: bipolar disorder; generalized anxiety disorder with panic attacks; schizoaffective disorder; paranoid disorder; and opioid and cannabis use disorder. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.*

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work with the following limitations: no climbing ladders, ropes, or scaffolds; frequent reaching overhead with the dominant right upper extremity; occasional work around unprotected heights; simple, routine tasks but not a production rate pace as required when working on an assembly line or conveyor belt; ability to make judgments on simple work and respond appropriately to usual work situations and changes in a routine work setting with few and occasional changes that are explained in advance and implemented slowly; no interaction with the general public and only occasional interaction with supervisors and coworkers; no team or tandem tasks, conflict resolution, problem solving, negotiating, or training with coworkers; and only occasional verbal communication necessary to ensure that a specific work step or process is completed. R. 18. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 27. At step five, the ALJ found that, in reliance on the VE's testimony, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from the application date of January 3, 2019, through the date of the decision, March 3, 2021. R. 28.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted); *see also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

## DISCUSSION

Plaintiff challenges the ALJ's decision on the grounds that the RFC lacks an evidentiary basis and is not inclusive of all the limitations supported by the record. Additionally, Plaintiff argues that the ALJ discounted her subjective complaints without properly considering Plaintiff's daily activities and supporting, third-party statements. As detailed below, the Court finds that neither of these arguments requires a remand.

### A. RFC assessment

Plaintiff questions the ALJ's RFC assessment, arguing that it is unsupported and fails to include all the limitations established by the record. Pl.'s Br. at 9, Dkt. 17. Specifically, Plaintiff faults the ALJ for finding that she has a moderate restriction in maintaining concentration, persistence, or pace ("CPP") but failing to include limitations that address this deficiency in the RFC. *Id.* at 10. Plaintiff does not argue that the ALJ should have found more than a moderate limitation in this area of mental functioning, only that her limitations in CPP were not properly accounted for in the RFC.

A claimant's RFC is the maximum work she can perform despite any limitations. 20 C.F.R. § 416.945(a)(1); SSR 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 416.945(a)(3); SSR 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct [her] own RFC finding without a proper medical ground and must explain how [she] has reached [her] conclusions." *Amey v. Astrue*, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). "Essentially, an ALJ's RFC analysis must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (internal quotations and citation omitted). Here, the ALJ has said enough to ensure that she considered the totality of Plaintiff's limitations and included all limitations supported by the record in formulating the RFC.

When evaluating Plaintiff's mental functioning at step three, the ALJ found Plaintiff to be moderately limited in CPP. R. 17. Based on this finding, the ALJ imposed the following mental RFC restrictions:

> The claimant can understand, remember, and carry out simple, routine tasks but not a production rate pace such as required working on an assembly line or conveyor belt. She can make judgments on simple work, and respond appropriately to usual

3

> work situations and changes in a routine work setting with few and occasional changes that are explained in advance and implemented slowly. She cannot interact with the general public. She can have occasional interaction with supervisors and coworkers. With coworkers, she cannot engage in team or tandem tasks, conflict resolution, problem solving, negotiating, or training and communication should be limited to occasional verbal communication necessary to ensure that a specific work step or process is completed.

R. 18.

Plaintiff first asserts that the RFC fails to fully account for her moderate limitations in CPP because a limitation to simple, routine tasks addresses only the complexity of the task and not her "ability to sustain sufficient concentration, persistence, or pace to perform these tasks consistently over the course of a workday." Pl.'s Br. at 11, Dkt. 17. However, Plaintiff seems to ignore the portion of the RFC that limits her to "not a production rate pace" which, according to Plaintiff's own case citation, adequately accounts for limitations in staying on task throughout the workday and performing at the required speed. See Pl.'s Br. at 10, Dkt. 17 (citing *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (noting that, while simple instructions and tasks did not account for the ability to perform at a sustained pace over the course of a workday, a restriction in claimant's ability to meet production requirements *does* adequately capture this limitation) (citing *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020))). Moreover, the ALJ relied on the state agency psychological consultants' opinions when translating Plaintiff's moderate limitations in CPP into limitations in the RFC, and Plaintiff does not challenge the ALJ's reliance on these opinions to support the RFC.

Plaintiff also contends that as it relates to her limitations in concentration "the ALJ erred in failing to account for off-task behavior" despite the VE's testimony that a claimant could only be off task up to ten percent of the day. Pl.'s Br. at 11-12, Dkt. 17. Plaintiff cites two district court cases to argue that an ALJ cannot ask the VE a question pertaining to off-task time only to ignore that testimony without explanation. *Id.* at 12 (citing *Stephen M. v. Berryhill*, No. 17-CV-7608, 2019 WL 2225986, at *6 (N.D. Ill. May 23, 2019); *Kukec v. Berryhill*, No. 16 CV 9805, 2017 WL 5191872, at *3 (N.D. Ill. Nov. 9, 2017)). However, an ALJ is not required to discuss every hypothetical posed to a vocational expert, particularly where the hypotheticals contain limitations that are not supported by the record. See *Outlaw v. Astrue*, 412 F. App'x 894, 898 (7th Cir. 2011) (unpublished) ("The ALJ needed only to include limitations in his RFC determination that were supported by the medical evidence and that the ALJ found to be credible."); *Kathleen C. v. Saul*, No. 19 C 1564, 2020 WL 2219047, at *6 (N.D. Ill. May 7, 2020) ("The fact that an ALJ considers adding a [ ] limitation to an RFC does not establish that such a limitation is ultimately warranted."). Here, the only medical opinions addressing Plaintiff's functional limitations relating to her mental impairments that the ALJ found to be persuasive were that of the state agency psychological consultants. R. 22-23. Yet, neither of these opinions included an off-task limitation and, as stated above, Plaintiff does not challenge the ALJ's reliance on these opinions. R. 85, 109. Thus, the ALJ was not required to discuss an off-task limitation that was not supported by the record. See *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) ("[A]n ALJ need only include limitations that are supported by the medical record.").

4

Additionally, the only medical opinion Plaintiff relies on to support an off-task limitation is from nurse practitioner Brenda Reilly. Pl.'s Br. at 12, Dkt. 17 (citing R. 871). Ms. Reilly opined that Plaintiff's mental health symptoms would interfere with her ability to be on task during 21% or more of the workday. R. 871. However, the ALJ found Ms. Reilly's opinion unpersuasive, and Plaintiff does not challenge the ALJ's decision to discredit Ms. Reilly's opinion. Moreover, despite Plaintiff's argument that she required an off-task limitation to address her issues concentrating, Ms. Reilly found that Plaintiff had no limitations in concentration, persistence, or pace resulting from her mental impairments. R. 871. Instead, Ms. Reilly found that Plaintiff would be off task because "[b]eing around people makes her paranoid." R. 871. The ALJ specifically addressed Plaintiff's anxiety by including social limitations in the RFC that eliminated any contact with the public and limited the amount and type of contact with supervisors and coworkers. Accordingly, the ALJ properly incorporated all of Plaintiff's credible limitations. *See Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009) (finding that an RFC addressing the underlying causes of a CPP limitation "incorporated all of [Plaintiff's] credible limitations").

Lastly, Plaintiff faults the ALJ for failing to adopt a limitation to one- to two-step instructions without explanation. Pl.'s Br. at 12, Dkt. 17. Plaintiff argues that this limitation must be included as the ALJ found the state agency psychologists' opinions persuasive and they both included a restriction of one- to two-step instructions.

A limitation of one- to two-step instructions may very well be more restrictive than a limitation to simple, routine tasks. However, any error by the ALJ in not adopting this limitation is ultimately harmless because, of the jobs the VE testified about, a significant number still exist for Plaintiff even if she were restricted to one- to two-step instructions. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) ("An error is harmless if, upon examination of the record, the court can 'predict with great confidence what the result of remand will be.'") (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021)). Based on the testimony of the VE, the ALJ found that Plaintiff could perform work as a cleaner/housekeeper (DOT 323.687-014). R. 28. The cleaner/housekeeper position has an assigned reasoning level of 1, which the Dictionary of Occupation Titles ("DOT") defines as the ability to "carry out simple one- or two-step instructions." DOT, Appendix C § III, 1991 WL 688702 (4th ed. 1991). The VE testified that there were 217,000 cleaner/housekeeper jobs available in the national economy. R. 67. While there is no exact number of jobs that constitute a significant number, 217,000 in the national economy is certainly significant. *See Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011) (finding 140,000 nationally available jobs to be "well above the threshold for significance."); *Primm v. Saul*, 789 F. App'x 539, 546 (7th Cir. 2019) (unpublished) (holding 110,000 jobs nationally to be a significant number).

In her reply, Plaintiff does not contest that the cleaner/housekeeper job is consistent with a one- or two-step instruction limitation. Instead, Plaintiff argues that "the Commissioner may not speculate about how the ALJ would rule" on remand. Pl.'s Reply at 6, Dkt. 19 (citing *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999)). Arguing that *White* supports this contention is a complete mischaracterization of that holding. In *White*, the Seventh Circuit explained that the Social Security Administration could not speculate about what decision a probate court would make with new evidence. 167 F.3d at 375. *White* stands for the proposition that "[s]peculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence." *Id. White*, however, does not bar the Commissioner or this Court from using a harmless error analysis. In fact, the Seventh Circuit has held that this Court should not waste

5

"time and resources for both the Commissioner and the claimant" by remanding a case "where we are convinced that the ALJ will reach the same result." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Here, Plaintiff argues that a restriction to one- to two-step instructions should have been included in the RFC but, had it been included, Plaintiff would still be able to perform the job of cleaner/housekeeper, which has a significant number of jobs available in the national economy. Therefore, this Court is convinced that the ALJ would reach the same conclusion even with this restriction, so a remand is not warranted on this basis.

### B. Subjective symptoms evaluation

Plaintiff also contends that the ALJ did not adequately support her consideration of Plaintiff's subjective complaints with evidence and testimony. Pl.'s Br. at 13, Dkt. 17. Specifically, Plaintiff argues that the ALJ ignored the qualifiers Plaintiff attached to her daily activities and failed to consider Plaintiff's boyfriend's reports of her functional limitations. *Id.* at 13-14.

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *5-8. Because of the unique position the ALJ has to observe the claimant, this Court will normally not disturb such a credibility determination. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). "As long as an ALJ gives specific reasons supported by the record, [this Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Here, the ALJ's evaluation of Plaintiff's subjective symptoms was adequately supported by evidence and explanation.

Plaintiff first argues that the ALJ erred in evaluating her subjective symptoms because she ignored the restrictions attached to Plaintiff's activities of daily living. Pl.'s Br. at 13, Dkt. 17. Specifically, Plaintiff points to her testimony about unexplained fears causing breathing and functioning trouble as well as issues with memory and concentration. *Id.* She also points to the help she received with shopping and caring for her dog. It is true that "an ALJ is supposed to consider a claimant's limitations in performing household activities." *Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013) (unpublished). However, the ALJ's opinion must be looked at in its entirety and, when using this common-sense approach, her evaluation of Plaintiff's subjective symptoms is not patently wrong. *See Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) ("The court applies a common-sense reading to the entirety of an ALJ's opinion.").

In her decision, the ALJ did address Plaintiff's anxiety and how it manifested itself in her life. The ALJ acknowledged Plaintiff's function report describing her "unexplained fear and panic attacks when going out alone" as well as her "trouble with her memory, completing tasks, [and] concentration." R. 19. The ALJ even noted that Plaintiff "gets distracted easily… when washing dishes or sweeping the floor." R. 20. Although the ALJ did not mention every difficulty Plaintiff faced in completing daily tasks, the ALJ did not unduly assign weight to Plaintiff's activities of daily living. Instead, the ALJ considered Plaintiff's daily activities as one reason to discredit Plaintiff's complaints among several other valid reasons. *See generally Schreiber*, 519 F. App'x at 961; *see also Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) ("[T]he ALJ's failure to

6

mention a few limitations on some of Plaintiff's activities, if wrong at all, was not so 'patently wrong' as to warrant reversal."). These reasons included therapy notes describing positive progress, normal affect, concentration, and memory at her psychiatric evaluation, resolution of her hallucinations, and several stable mental status examinations in addition to her ability to complete her activities of daily living. R. 20-22. Because the common-sense approach requires this Court to look at the ALJ's opinion in its entirety, the ALJ's lack of qualifying language in the paragraph referenced by Plaintiff does not show a patent error requiring remand. Pl.'s Br. at 13, Dkt. 17 (citing R. 23–24).

Plaintiff goes on to argue that the ALJ did not properly consider the functional limitations reported by Plaintiff's boyfriend, Mr. Kendall, which she claims goes against the requirements in SSR 16-3p. Pl.'s Br. at 14, Dkt. 17. However, SSR 16-3p simply states that third party reports "*may* provide information from which [ALJs] *may* draw inferences and conclusions." SSR 16-3p, 2016 WL 1119029, at *7. Here, the ALJ clearly did not ignore Mr. Kendall's report as it was summarized in her opinion.

Nevertheless, Plaintiff argues in her reply that the ALJ erred by simply summarizing Mr. Kendall's statements rather than providing an explanation of the evidence that did or did not support his statements. Pl.'s Reply at 8, Dkt. 19. However, as Plaintiff points out, the ALJ's discussion of Mr. Kendall's report reveals that it was substantially consistent with Plaintiff's own reports: Plaintiff and Mr. Kendall live together, Plaintiff experiences panic attacks and her anxiety affects her memory and concentration, she does not do well with handling stress and is sometimes reckless, but has no issues with authority, personal care, or typical household chores. R. 19. In analyzing Plaintiff's own reports, the ALJ identified the evidence in the record that she found to be inconsistent, which would similarly apply to Mr. Kendall's reports. *See Sherman v. Kijakazi*, No. 22-CV-3113, 2023 WL 5304650, at *5-6 (C.D. Ill. Aug. 17, 2023) (citing *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993)) ("The information contained in Plaintiff's and [the third-party's function] reports were substantially similar and, thus, would have been redundant. Therefore, the ALJ did not err in failing to specifically discuss it."). Therefore, any error committed by the ALJ in failing to evaluate Mr. Kendall's reports separately is ultimately harmless and does not warrant a remand.

The ALJ sufficiently evaluated Plaintiff's subjective symptoms and supported this evaluation with substantial support without ignoring whole lines of evidence. Accordingly, the ALJ's subjective symptom analysis is not patently wrong, and thus, a remand is not warranted on this basis.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary remand [17] is denied, and the Commissioner's motion for summary judgment [18] is granted. The Commissioner's decision is affirmed. Final judgment will be entered accordingly.

Date: January 14, 2025          Enter: *Margaret J. Schneider*
                                       United States Magistrate Judge